IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DIEGO TOBIAS MATRAJT and MARK DANIEL DEHAVEN,<br><br>Plaintiffs,<br><br>v.<br><br>THE UNITED STATES PROBATION OFFICE FOR THE WESTERN DISTRICT OF PENNSYLVANIA, BRIAN W. GRAY, ALEXIS ZELLEFROW and NICHOLAS CAPACCIO,<br><br>Defendants. | ) | Civil Action No. 2: 20-cv-1660<br><br>Magistrate Judge Patricia L. Dodge |

**MEMORANDUM ORDER**[1]

Pending before the Court is Defendants' Motion to Dismiss (ECF 44) the Amended Complaint (ECF 30) and Plaintiffs' Motion for Preliminary Injunctive Relief (ECF 18). For the reasons that follow, the Court will grant Defendants' Motion and deny Plaintiffs' Motion.

## I. Relevant Background[2]

The plaintiffs here are Diego Tobias Matrajt and Mark Daniel DeHaven. The Amended Complaint, the operative pleading, names as defendants: (1) the United States Probation Office for the Western District of Pennsylvania ("WDPA USPO"); (2) Brian Gray, the Chief Probation

[1] In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties have voluntarily consented to have a United States Magistrate Judge conduct proceedings in this case. Thus, the undersigned has the authority to decide dispositive motions and enter final judgment.

[2] The following background is based on the facts alleged in the Amended Complaint as well as documents filed in Plaintiffs' respective federal criminal cases in *United States v. Matrajt*, No. 1:12-cr-20343 (S.D. Fl.) and *United States v. DeHaven*, No. 6:14-cr-244 (M.D. Fl.), which are part of the public record and of which the Court may take judicial notice.

Officer of the WDPA USPO; (3) Alexis Zellefrow, a supervisory officer with the WDPA USPO; and (4) Nicholas Capaccio, who at the time of the events alleged in the Amended Complaint was a probation officer with the WDPA USPO. (Amend. Compl. p. 1 and ¶¶ 24-27.) The Amended Complaint names Gray, Zellefrow and Capaccio as defendants in their official capacities only. (*Id.*)

All claims asserted against Defendants in the Amended Complaint are premised upon the WDPA USPO's denial of a request from Matrajt's sentencing court, the United States District Court for the Southern District of Florida ("Sentencing Court"), to transfer supervision of Matrajt to the Western District of Pennsylvania upon his release to his term of supervised release. By exercising this alleged "flagrant abuse of discretion and unlawful use of authority," Plaintiffs assert, the WDPA USPO "is knowingly and deliberately preventing Plaintiffs from exercising their rights to intimate association by substantially and directly interfering with their ability to enter into and maintain a marital relationship." (*Id.* ¶ 3.)

In 2012, Matrajt appeared before the Sentencing Court and pleaded guilty to a three-count indictment. The Indictment charged him in Count One with Distribution of Child Pornography, in violation of 18 U.S.C. § 2252(a)(2), based on the online sharing of P2P files containing child pornography with an undercover agent; in Count Two with Possession of Child Pornography, in violation of 18 U.S.C. § 2252(a)(4)(B), based on his possession of surreptitious web cam videos that he produced of children changing for portrait photographs at his residence that was saved on his computer; and in Count Three with Possession of Child Pornography, in violation of 18 U.S.C. § 2252(a)(4)(B), based on child pornography videos of boys age 12 and under found on his computer. (ECF 41 in *Matrajt*, No. 1:12-cr-20343.)

Matrajt was sentenced to a 120-month term of imprisonment, to be followed by twenty-five years of supervised release that included special conditions for sex offenders, as well as the standard condition of supervised release that prohibits him from associating with any person convicted of a felony (which the Amended Complaint refers to as "Standard Condition No. 9"). (ECF 59 in *Matrajt*, Case No. 1:12-cr-20343.) He was placed in the custody of the Federal Bureau of Prisons ("BOP"), which designated him to FCC Coleman Low, located in Sumterville, Florida.

In 2015, DeHaven pleaded guilty to one count of Receipt of Child Pornography, in violation of 18 U.S.C. §§ 2252A(a)(2)(B) and (b)(1). He was sentenced in the Middle District of Florida to a term of imprisonment of 97 months, followed by 10 years of supervised release. DeHaven's conditions of supervised release also included special conditions for sex offenders, as well as the standard condition that prohibits him from associating with any person convicted of a felony. (ECF 31 in *DeHaven*, No. 6:14-cr-244).

According to the Amended Complaint, Matrajt and DeHaven met while they were inmates in the custody of the Federal Bureau of Prisons ("BOP") and incarcerated at FCC Coleman Low. They have been in a committed relationship since 2017, are engaged and intend to live together and get married upon release from prison. (Amend. Compl. ¶¶ 7, 9, 37.)

The BOP calculated Matrajt's projected release date to be August 7, 2021 (*Id.* ¶ 30.) DeHaven had an earlier release date, and he was approved by the USPO to be released to the WDPA for supervision upon his release from BOP custody. DeHaven currently resides in Everson, Pennsylvania. (*Id.* ¶¶ 11, 23, 36.)

In November 2019, Matrajt submitted a release plan to his BOP case manager requesting a change in his release location to an address outside the Southern District of Florida. Specifically,

Matrajt proposed that he live in Everson, Pennsylvania with his parents in a rental house provided by DeHaven's mother.[3] (*Id.* ¶¶ 30, 37, 42; *see also* ECF 90 p. 18 in *Matrajt*, No. 1:12-cr-20343.) Matrajt's BOP case manager forwarded a release package to the WDPA USPO for review. It was reviewed by Capaccio, who conducted a site visit of the proposed residence in Everson and interviewed DeHaven's mother via telephone. (*Id.* ¶ 30.)

According to the Amended Complaint, Matrajt was informed by his BOP case manager in March 2020 that the WDPA USPO denied Matrajt's relocation request for three reasons: (1) Matrajt did not have prior or existing family ties to the Western District of Pennsylvania; (2) the proposed residence in Everson, Pennsylvania was rural with limited access to employment and transportation; and (3) the first two factors would make it difficult for Matrajt to comply with the sex offender conditions of his supervised release. (*Id.* ¶ 31.)

The Amended Complaint alleges that from March to August 2020, Plaintiffs sent various letters to the WDPA USPO and the USPO for the Southern District of Florida ("SDFL USPO") requesting reconsideration of the denial because they wanted to cohabitate and get married upon Matrajt's release prison. (*Id.* ¶¶ 32-35, 38-42.) In April 2020, an officer with the SDFL USPO advised Plaintiff "that it appeared all of [his] ties were to Florida and asked him to have his Case Manager submit a release plan to the SDFL." (*Id.* ¶ 34.) Gray was one of the individuals to whom Matrajt sent a letter. Additionally, DeHaven's mother spoke with Zellefrow and Capaccio and

[3] The proposed plan was for Matrajt and DeHaven to live with DeHaven's father in one side of a duplex, and for Matrajt's parents to live in the other side of the same duplex. (Amend. Compl. ¶ 42; *see also* ECF 90 p. 4 in *Matrajt*, No. 1:12-cr-20343.) In a motion Matrajt filed with the Sentencing Court in November 2020, Matrajt advised the court that his father had unfortunately passed away that month and his mother resided in Argentina. (ECF No 108 in *Matrajt*, No. 1:12-cv-20343.)

Matrajt's father attempted to speak with Capaccio. Neither USPO reconsidered its position. (*Id.* ¶¶ 32-35, 38-42.)

In August 2020, Matrajt spoke with his BOP case manager and asked her to submit another request to change his release location to Everson, Pennsylvania. She advised him that she had to "wait a year after the last denial before submitting [Matrajt's] new relocation request[,]" and thus "contrary to [Matrajt's] request, she had him sign a release plan to the SDFL." (*Id.* ¶ 42.) In October 2020, Matrajt's BOP counselor advised him that he would "never make it to the WDPA because you've done something to piss off the higher-ups and they now have a personal grudge against you." (*Id.* ¶ 42.)

On October 19, 2020, Matrajt filed in the Sentencing Court a motion under 18 U.S.C. § 3583(e)(2), which he later amended, requesting that he be permitted to serve his supervised release in the WDPA. Further, he asked the Sentencing Court to modify the standard condition of supervised release that prohibits him from associating with any person convicted of a felony. (ECF 89, 90, 97 and 98 in *Matrajt*, No. 1:12-cr-20343.)

On November 24, 2020, the Sentencing Court denied Matrajt's request without prejudice, explaining that it was premature. The Sentencing Court directed that "the USPO shall conduct further investigation in this matter and shall interview DeHaven, DeHaven's father, [Matrajt's] parents and [Matrajt's] ex-wife and children. Those interviews shall be conducted within 90 days, to the extent feasible." (ECF 102 p. 2 in *Matrajt*, No. 1:12-cr-20343.) The Sentencing Court also noting other concerns, "including [Matrajt's] failure to avail himself of sex offender counseling during his incarceration, which also weigh against this transfer." (*Id.* p. 2.)

In January 2021, Matrajt filed with the Sentencing Court an emergency motion for

modification of his conditions of supervised release under 18 U.S.C. § 3583(e)(2). (ECF 108 in *Matrajt*, No. 1:12-cr-20343.) Matrajt requested, in relevant part, that the Sentencing Court (1) "modify standard condition No. 9" of the conditions of his supervised release so that he could cohabitate with DeHaven; and (2) "add a special condition of supervised release requiring that upon release from prison, [he] is allowed to temporarily reside in the WDPA under 'interim courtesy supervision' by this district (jurisdiction to remain in SDFL.)" (ECF 108 p. 1 in *Matrajt*, No. 1:12-cr-20343.)

The Sentencing Court initially granted these requests in an order dated March 12, 2021. (ECF 117 in *Matrajt*, No. 1:12-cr-20343.) However, it rescinded that order on April 21, 2021, explaining:

> On March 12, 2021, the Court entered an order…granting in part [Matrajt's] emergency motion to transfer jurisdiction of his supervision to the Western District of Pennsylvania once he is released from custody in August 2021. The Court also wrote a letter to the Chief Judge of the Western District of Pennsylvania asking that the defendant's transfer be accepted by that district. The Western District of Pennsylvania has denied this Court's request to transfer supervision for some valid reasons: [Matrajt] has no family members in the Western District of Pennsylvania, has no possible employment there, has not taken advantage of voluntary sex offender counseling while incarcerated, and has not demonstrated that he is a compliant supervisee since he has yet to complete his prison sentence. The Western District has also indicated that once [Matrajt] has been released and demonstrates his ability and willingness to comply with his conditions of supervision, it will reconsider a transfer request.
>
> The Court hereby rescinds its previous order…and will consider a request for transfer again once [Matrajt] has been on supervised release for a reasonable period of time and has established he is compliant and has established that he has family and employment in the Western District of Pennsylvania.

(ECF 120 in *Matrajt*, No. 1:12-cr-20343.) Matrajt filed a motion for reconsideration with the Sentencing Court on May 4, 2021, which was denied the next day. (ECF 121, 122 in *Matrajt*, No. 1:12-cr-20343.)

In the meantime, Plaintiffs began the instant action in this Court in October 2020 by filing a motion for leave to proceed *in forma pauperis*. (ECF 1.) The Court entered an Order administratively closing the case with permission to reopen if Plaintiffs paid the filing fee or filed the required documents in support of their motions for leave to proceed *in forma pauperis*. (ECF 3.)

In February 2021, the Court granted Plaintiffs' motions for leave to proceed *in forma pauperis* and the original complaint (ECF 17) was docketed on that date. In addition to the WDPA USPO, Gray, Zellefrow and Capaccio, Plaintiffs also named as a defendant the United States Probation Office for the Southern District of Florida ("SDFL USPO"). Plaintiffs also filed the pending Motion for Preliminary Injunction (ECF 18) in which they requested an order directing Defendants to cease interfering with or blocking Matrajt's ability to serve his term of supervised release within the Western District of Pennsylvania.

Plaintiffs filed the Amended Complaint (ECF 30) on or around April 8, 2021. The Amended Complaint names as defendants the WDPA USPO and Gray, Zellefrow and Capaccio in their official capacities only.[4] It asserts that WDPA USPO is violating Plaintiffs' First Amendment rights to intimate and familial association (Count I) and Fifth Amendment Due Process rights (Count II), and that the WDPA USPO's actions were retaliatory and the decision to deny Matrajt's transfer request amounts to cruel and unusual punishment under the Eighth Amendment (Count III). The Amended Complaint also asserts that the WDPA USPO violated the federal statute governing terms of supervised release, 18 U.S.C. 3583(d) (Count IV), and the Policies and Guidelines of the USPO and BOP (Count V). (*Id.* ¶¶ 45-72.)

---

[4] The SDFL USPO is not named as a defendant in the Amended Complaint.

The Amended Complaint seeks declaratory relief and an injunction "enjoining Defendants from interfering or seeking to interfere with Plaintiffs' constitutionally protected liberty of intimate association[,]" and "an order directing Mr. Matrajt's direct release from prison to the WDPA in order to serve his term of supervised release." (*Id.* p. 7.)

Defendants later filed the pending Motion to Dismiss and a Response in Opposition to Plaintiffs' Motion for a Preliminary Injunction. (ECF 44, 45, 46.) They assert that the Court lacks subject matter jurisdiction over all the claims brought in the Amended Complaint under the principle of sovereign immunity. They also assert that, to the extent that the Amended Complaint actually brought any claim against Gray, Zellefrow and/or Capaccio as individuals, rather than in their official capacities, they are entitled to absolute immunity.[5]

Plaintiffs' response to Defendants' Motion to Dismiss was initially due on August 16, 2021. (ECF 49.) The Court granted in part Matrajt's motion for an extension (ECF 53) and directed that Plaintiffs' response was due by September 9, 2021. (ECF 56.)

Plaintiffs did not file a response to Defendants' Motion to Dismiss. As reflected by Matrajt's recent notice of change of address, he was released from BOP custody on or around August 6, 2021 and his mailing address is now a residence in Miami, Florida. (ECF 52.)

## II. Standard of Review

Under Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed, in whole or in part, for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a Rule 12(b)(6) motion, the court must "accept all factual allegations as true, construe

[5] Alternatively, Defendants contend the Amended Complaint fails to state a claim upon which relief can be granted. The Court will not address this alternative argument because it concludes Defendants' sovereign and absolute immunity bars Plaintiffs' claims.

the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). While "accept[ing] all of the complaint's well-pleaded facts as true," the court "may disregard any legal conclusions." *Id.* at 210-11.

To survive a motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Though 'detailed factual allegations' are not required, a complaint must do more than simply provide 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 241 (3d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555). In sum, the plaintiff "must plead facts sufficient to show that her claim has substantive plausibility." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10 (2014). The court's plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

In assessing a motion to dismiss, courts may generally only consider the allegations that are in the complaint. *See, e.g.*, *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). However, courts may also consider matters of public record, undisputedly authentic documents attached to a motion to dismiss, and integral documents that form the basis of a claim. *Id.; Delaware Nation v. Pennsylvania*, 446 F.3d 410, 413 n.3 (3d Cir. 2006).

Defendants' sovereign immunity argument touches upon the Court's subject matter

jurisdiction. Rule 12(b)(1) provides that "a court must grant a motion to dismiss if it lacks subject-matter jurisdiction to hear a claim." *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012); *see* Fed. R. Civ. P. 12(h)(3). "A facial 12(b)(1) challenge, which attacks the complaint on its face without contesting its alleged facts, is like a 12(b)(6) motion in requiring the court to 'consider the allegations of the complaint as true.'" *Hartig Drug Co. Inc. v. Senju Pharm. Co.*, 836 F.3d 261, 268 (3d Cir. 2016) (quoting *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 n.3 (3d Cir. 2006)). However, a complaint must adequately allege a basis for the court's jurisdiction, and if it fails to do so, the lawsuit can be dismissed. Jurisdictional allegations are subject to the same plausibility requirement that applies to allegations of a claim for relief under the *Twombly/Iqbal* line of authority. Conclusory allegations of fact are insufficient regardless of whether it relates to a claim for relief or a basis for jurisdiction. *See, e.g.*, *Schering-Plough*, 678 F.3d at 243-44 (applying plausibility requirement to evaluate whether complaint adequately pleads elements of jurisdictional requirement of standing).

Unlike a facial challenge, "a factual 12(b)(1) challenge attacks allegations underlying the assertion of jurisdiction in the complaint, and it allows the defendant to present competing facts." *Hartig Drug Co. Inc. v. Senju Pharm. Co.*, 836 F.3d 261, 268 (3d Cir. 2016). "When considering a factual challenge, 'the plaintiff [has] the burden of proof that jurisdiction does in fact exist,' the court 'is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case,' and 'no presumptive truthfulness attaches to [the] plaintiff's allegations[.]'" *Id.* (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). Additionally, under a factual challenge, "a court may weigh and consider evidence outside the pleadings." *Id.* (quoting *Constitution Party of Pa.*, 757 F.3d at 358). "[A] 12(b)(1) factual challenge strips the plaintiff of

the protections and factual deference provided under 12(b)(6) review." *Id.* (citing *Davis v. Wells Fargo*, 824 F.3d 333, 348-50 (3d Cir. 2016)).

Defendants assert that they are levying both a facial and factual challenge to the Court's subject matter jurisdiction. (ECF 45 pp. 7-8.) They have attached to their motion to dismiss Gray's Declaration, in which he explains, in relevant part, the official duties of individual defendants, which does not appear to conflict with the Amended Complaint's assertion of those duties. (Amend. Compl. ¶¶ 25-27.) A factual challenge to the Court's subject matter jurisdiction requires a factual dispute, and there does not appear to be one here. Consequently, the Court views Defendants' sovereign immunity argument as raising a facial challenge.

Finally, the Court notes that "[a] document filed *pro se* is to be liberally construed and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers[.]"*Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal citation and quotation marks omitted); *see also Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011) ("The obligation to liberally construe a pro se litigant's pleadings is well-established."). Additionally, the Court must "apply the relevant legal principle even when the complaint has failed to name it." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244 (3d Cir. 2013). That said, "*pro se* litigants still must allege sufficient facts in their complaints to support a claim[,]" and "they cannot flout procedural rules—they must abide by the same rules that apply to all other litigants." *Id.* at 245.

## III. Discussion

"Federal Probation officers are appointed individually by the district courts. 18 U.S.C. § 3602(a) and 28 U.S.C. § 609. They are employed by the United States Courts and are under the administrative control of the Director of the Administrative Office of the United States Courts."

*Schroeder v. Polk*, 842 F. Supp. 355, 356 (N.D. Ind. 1993); 18 U.S.C. § 3602(a) ("A district court of the United States shall appoint qualified persons to serve...as probation officers within the jurisdiction and under the direction of the court making the appointment.").

The WDPA USPO is not a legal, suable entity. By naming the WDPA USPO as a defendant in this action, Plaintiffs are suing this district court, and ultimately, the United States. *see, e.g.*, *Fuller-Avent v. United States Prob. Off.*, 226 F. App'x 1, 2 (D.C. Cir. 2006) ("Federal probation offices are administrative units of the United States court[.]"); *Farrow v. Western District of Pa. Parole and Prob.*, No. 2:08-cv-263, 2008 WL 597189, at *2 (W.D. Pa. Mar. 4. 2008) (the WDPA USPO "is part of the Administrative Office of the United States Courts, and is a federal agency."); *Shannon v. Nolan*, No. 11-cv-163, 2012 WL 6055168, at *2 (W.D. Wis. Dec. 6, 2012) (same).

Similarly, official capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (quoting *Monell v. New York City Dept. of Soc. Serv.*, 436 U.S. 658, 690 n.55 (1978)); *see, e.g.*, *Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). Thus, by naming Gray, Zellefrow and Capaccio as defendants in their official capacities, Plaintiffs' claims against them—like their claims brought against the WDPA USPO—are in actuality asserted against this federal court and ultimately the United States. *Id.* at 166.

The principle of sovereign immunity prohibits the United States and its agencies from being sued unless federal legislation specifically authorizes suit. *See, e.g.*, *FDIC v. Meyer*, 510 U.S. 471, 745 (1994); *Antol v. Perry*, 82 F.3d 1291, 1296 (3d Cir.1996). Federal courts have no subject matter jurisdiction to hear a claim against the United States or its agencies absent a clear waiver of sovereign immunity. *Id.* ("Absent a waiver, sovereign immunity shields the Federal

Government and its agencies from suit. Sovereign immunity is jurisdictional in nature.") (citations omitted).

"A waiver of sovereign immunity cannot be implied but must be unequivocally expressed" in the text of a statute. *United States v. Mitchell*, 445 U.S. 535, 538 (1980) (internal quotation and citation omitted). Additionally, a waiver of sovereign immunity "must be 'construed strictly in favor of the sovereign,' and not 'enlarge[d]…beyond what the language requires.'" *United States v. Nordic Village, Inc.*, 503 U.S. 30, 34 (1992) (quoting *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 685 (1983)).

The United States has not waived its sovereign immunity with respect to any of the claims brought by Plaintiffs. The Amended Complaint asserts generally that the Court has jurisdiction under 28 U.S.C. § 1331 and the Declaratory Judgment Act, 28 U.S.C. § 2201. (Amend. Compl. ¶¶ 17-18.) Neither of these statutes waives the United States' sovereign immunity, however. *See, e.g.*, *Gilbert v. DaGrozza*, 756 F.2d 1455, 1458-59 (9th Cir. 1985) ("28 U.S.C. § 1331 merely provides that the district court shall have original jurisdiction in all civil actions arising under the Constitution, laws or treaties of the United States…. It cannot be itself be construed as constituting a waiver of the government's defense of sovereign immunity."); *Dempsey v. United States*, No. 15-cv-2847, 2015 WL 6561217, at *2 (D.N.J. Oct. 29, 2015) ("Nor can Plaintiff rely on the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02, or the federal question statute, 28 U.S.C. § 1331, as neither abrogates sovereign immunity.")

The Amended Complaint also asserts that the Court has jurisdiction pursuant to 28 U.S.C. § 1346(a)(2). (Amend. Compl. ¶ 17). This statute, known as the Little Tucker Act, has no applicability to the claims brought against Defendants and cannot provide a basis for jurisdiction

or a waiver of sovereign immunity. *See, e.g.*, *Lemus v. McAleenan*, No. 20-cv-3344, 2021 WL 2253522, at *3 (D.N.J. June 3, 2021); *Wilkens v. United States*, No. 03-cv-1837, 2004 WL 1198138, at *3 (D.N.J. Feb. 19, 2004) ("the [Little Tucker] Act has long been construed as authorizing only actions for money judgments and not suits for equitable relief against the United States.") (citing *Richardson v. Morris*, 409 U.S. 464, 465 (1973)).

Moreover, although the Administrative Procedure Act ("APA") waives sovereign immunity to allow claims for injunctive relief against federal agencies or an officer or employee thereof, *see* 5 U.S.C. § 702, the definition of "agency" in this waiver expressly excludes the federal courts and, as such, the USPO. 5 U.S.C. § 551(1)(B). *Robbins v. United States Probation Office for Dist. of Minneapolis*, No. 20-cv-1918, 2021 WL 1255402, at *4 (D. Minn. Mar. 18, 2021) (the APA is inapplicable to the USPO, which is an arm of the judicial branch), *aff'd sub. nom.* Order, No. 21-1740 (8th Cir. July 2, 2021); *Shannon*, No. 11-cv-163, 2012 WL 6055168, at *2 ("although the United States has waived sovereign immunity to allow claims for injunctive relief against federal agencies, 5 U.S.C. § 702, the definition of 'agency' in this waiver expressly excludes the federal courts, 5 U.S.C. § 551(1)(B). Thus equitable relief against 'the U.S. Probation Department is equally unavailable."); *Bauer v. U.S. Marshal Serv.*, No. 3:13-cv-00205, 2013 WL 1564941, at *3 (M.D. Tenn. Apr. 12, 2013) (same); *AmSouth v. Bank v. Mississippi Chem. Corp.*, 465 F. Supp. 2d 1206, 1210 (D.N.M. 2006) (same).

The Court notes that "[a] plaintiff cannot automatically avoid the reach of sovereign immunity simply by suing an individual officer. In cases where an individual officer is named, the court must determine whether the suit is against the officer acting as an individual, or whether the suit is attempting to compel the officer to act in some way that will impact the government, and is,

therefore, a suit against the sovereign." *Berkery v. Comm'r*, No. 09-cv-4944, 2010 WL 99376, at *2 (E.D. Pa. Jan. 11, 2010) (citing *Larson v. Domestic & Foreign Com. Corp.*, 337 U.S. 682, 689 (1949)).

In *Larson*, the Supreme Court recognized that "the crucial question is whether the relief sought in a suit nominally addressed to the officer is relief against the sovereign." 337 U.S. at 687. It "recognized that "[t]here may be, of course, suits for specific relief"—"i.e., the recovery of specific property or monies, ejectment from land, or injunction either directing or restraining the defendant officer's action"—"against officers of the sovereign which are not suits against the sovereign." *Id.* at 688-89. Those suits, the Supreme Court has held, fall into two categories. Specifically, a suit against a federal official for specific relief is not considered to be against the government, and thus not barred by sovereign immunity, where the plaintiff alleges: "(1) actions by officers beyond their statutory powers [or] (2) even though within the scope of their authority, the powers themselves or the manner in which they are exercised are constitutionally void. In either of such cases the officer's action 'can be made the basis of a suit for specific relief against the officer as an individual[.]" *Dugan v. Rank*, 372 U.S. 609, 621-22 (1963) (quoting *Malone v. Bowdoin*, 369 U.S. 643, 647 (1962), which quoted *Larson*, 337 U.S. ).

Neither category is implicated in this case. The Amended Complaint contains no plausible allegation that the individually named defendants acted beyond the scope of their authority or pursuant to an unconstitutional grant of authority. While the Amended Complaint asserts the WDPA USPO's ultimate decision not to approve Matrajt's transfer request violated Plaintiffs' constitutional rights, there are no allegations stating how any individual defendant's actions amount to a constitutional violation.

In any event, when either of the two above-cited categories apply, they allow for the "permissibility of suit against an officer individually, and not in the capacity of an official of the United States." *Zumerling v. Marsh*, 591 F. Supp. 537, 550-51 (W.D. Pa. 1984) (Mansmann, J.), *aff'd sub nom. Zumerling v. Devine*, 769 F.2d 745 (Fed. Cir. 1985). "Clearly [the above-cited categories] are inapplicable herein, as…[the individually-named] Defendant[s] have not been sued in their individual capacity." (*Id.*)

Importantly, even if the Court construes the allegations of the Amended Complaint as bringing a claim against Gray, Zellefrow or Capaccio in their individual capacities, such a claim, while not barred by the principle of sovereign immunity, is barred by the principle of absolute judicial immunity. That is because in denying a relocation request, a probation officer is acting "as an agent of the court." *United States v. Votta*, 212 F. App's 142, 143 (3d Cir. 2007); *see also Lewis v. Bureau of Prisons*, No. 17-cv-5475, 2018 WL 6046721, at *4 (D.N.J. Nov. 19, 2018) ("[A] probation officer acting in a judicial capacity is entitled to absolute immunity.") (quoting *Stankowski v. Farley*, 251 F. App'x 743, 747 (3d Cir. 2007)).

Based upon the foregoing, the Court lacks subject matter jurisdiction over any of Plaintiff's claims against Defendants under the principle of sovereign immunity. To the extent that the Amended Complaint asserts a claim against Gray, Zellefrow or Capaccio as individuals and not in their official capacities with the WDPA USPO, these claims are barred by the doctrine of judicial immunity. Therefore, the Court will grant Defendants' Motion (ECF 44) and dismiss all claims brought in the Amended Complaint with prejudice.[6]

---

[6] When dismissing a civil rights case for failure to state a claim, a court must give a plaintiff the opportunity to amend a deficient complaint, irrespective of whether it is requested, unless doing *Footnote continued on the next page…*

The Court will also deny Plaintiff's Motion for Preliminary Injunction (ECF 18) since Plaintiff's cannot show a reasonable likelihood of success on the merits for all the reasons set forth above, and the Court's dismissal is with prejudice.[7]

**IV. Conclusion**

For these reasons, Defendants' Motion to Dismiss (ECF 44) will be granted. Plaintiff will not be granted leave to file an amended complaint. Additionally, Plaintiffs' Motion for Preliminary Injunctive Relief (ECF 18) will be denied.

An appropriate Order follows.

BY THE COURT:

Dated: September 20, 2021

/s/ Patricia L. Dodge
PATRICIA L. DODGE
United States Magistrate Judge

---

so would be "inequitable or futile." *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 251 (3d Cir. 2007); *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). "An amendment is futile if the amended complaint would not survive a motion to dismiss for failure to state a claim upon which relief could be granted." *Alston v. Suzuki*, 227 F.3d 107, 121 (3d Cir. 2000). Here, any amendment would be futile because Plaintiffs' claims against Defendants are barred for the reasons discussed herein.

[7]It is well-established that temporary or preliminary injunctive relief is "an extraordinary remedy" and "should be granted only in limited circumstances." *Kos Pharm., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004) (quoting *American Tel. & Tel. Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1427 (3d Cir. 1994)). In evaluating a movant's request for a temporary restraining order or preliminary injunctive relief, courts employ the familiar four-factor balancing test. *Reilly v. City of Harrisburg*, 858 F.3d 173, 176-79 (3d Cir. 2017). That test requires, among other things, that the movant demonstrate a reasonable probability of eventual success in the litigation. *Id.*